UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EDWARD KLEPEIS,

                              Plaintiff,

        - against -                        **OPINION AND ORDER**

J&R EQUIPMENT, INC., J&R EQUIPMENT,      No. 10-CV-0363 (CS)(PED)
INC. 401(k) PLAN AND TRUST, and JOSEPH T.
FALANGA,

                              Defendants.
------------------------------------------------------------x

Appearances:

Jeffrey S. Sculley, Esq.
Rider, Weiner & Frankel, P.C.
New Windsor, NY
*Counsel for Plaintiff*

Edmund V. Caplicki, Jr., Esq.
The Law Offices of Edmund V. Caplicki, Jr.
Lagrangeville, NY
*Counsel for Defendants*

Seibel, J.

      Before the Court are the Motions for Summary Judgment of the Plaintiff, (Doc. 24), and the Defendants, (Doc. 34).[1]  For the reasons below, Plaintiff's Motion is GRANTED and Defendants' Motion is DENIED.

---

[1] Counsel for both parties have publicly filed, on the Court's Electronic Case Filing ("ECF") System, documents with Plaintiff's personal identifying and financial account information, (Docs. 35, 36, 43, 57, 58, 61), in violation of Rule 5.2 of the Federal Rules of Civil Procedure and Rules 21.2–21.4 of the Electronic Case Filing Rules & Instructions for the Southern District of New York, available at http://www.nysd.uscourts.gov/ecf_filing.php.  The parties are directed to, within two weeks of the date of this Order, refile their motion papers with the personal identifying and financial account information redacted.  They are to do the same for any other documents containing such information, and upon the re-filing of any such papers, notify the Clerk by letter as to which unredacted documents are to be withdrawn from the public record.

**I.     Background**

The following facts are undisputed except where noted. Plaintiff, a former employee of Defendant J&R Equipment, Inc. ("J&R") brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, as a result of Defendant Joseph T. Falanga's refusal to roll over Plaintiff's balance in the J&R Equipment, Inc. 401(k) Plan and Trust (the "Plan") to an Individual Retirement Account ("IRA"). (Doc. 1.)

Mr. Falanga was at all relevant times the sole owner of J&R and made all decisions regarding J&R's operation and business. (Ds' 56.1 ¶ 2.)[2] Plaintiff began working at J&R on or about April 28, 1998. (*Id.* ¶ 1.) Mr. Falanga set up the Plan on February 23, 2004. (*Id.* ¶ 3; Doc. 28, at 2.) At all relevant times, Mr. Falanga has served as the Plan's sole trustee and owed a fiduciary duty to Plan participants to oversee the Plan solely in their interest. (Ds' 56.1 ¶¶ 3–4.) Qualified Plan Consultants ("QPC"), a third-party, was hired to administer the Plan. (Falanga Aff. ¶ 10.)[3] Immediately upon becoming eligible, Plaintiff enrolled in and began paying a portion of his salary into the Plan, and J&R began making "safe harbor" and "profit sharing" contributions into Plaintiff's Plan account. (Ds' 56.1 ¶ 6.) At all relevant times, Plaintiff was a "covered employee" under the Plan and a Plan participant under ERISA. (*Id.* ¶ 5.)

Under the Plan, participants who resign may request distribution of their vested Plan balance: "[A]t the election of the Participant, the Administrator shall direct the Trustee that the entire Vested portion of the Terminated Participant's Combined Account be payable to such Terminated Participant on or after the Anniversary Date coinciding with or next following

---

[2]     "Ds' 56.1" refers to Defendants' Statement of Undisputed Material Facts. (Doc. 51.)

[3]     "Falanga Aff." refers to Affidavit of Joseph Falanga in Support of Defendants' Motion for Summary Judgment. (Doc. 50.)

termination of employment." (Plan Document 48.)[4]  "Anniversary Date" is defined as the last day of the "Plan Year," which in turn is defined as January 1 to December 31. (Plan Document 1, 11.)  Moreover, Plan benefits will be paid to participants "without the necessity of formal claims." (SPD 19.)  Upon termination of the Plan, participants are to be notified and distribution of accounts will be made "in a manner permitted by the Plan as soon as practicable." (*Id.*)

In 2001, Mr. Falanga offered to help Plaintiff build a new home on land purchased by Plaintiff so long as Plaintiff reimbursed Mr. Falanga for the cost of specific construction materials and specified subcontractors. (Falanga Aff. ¶ 6; Klepeis Aff. ¶ 5.)  The house was completed in the fall of 2002, and in December 2003, Mr. Falanga presented Plaintiff with an invoice for $301,500. (Falanga Aff. ¶ 8; Klepeis Aff. ¶ 7.)  Ultimately, Mr. Falanga accepted payment of $298,451.50 in full satisfaction of the invoice. (Falanga Aff. ¶ 8; Klepeis Aff. ¶ 7.)

In January 2005, Plaintiff, having been a full-time employee since starting, resigned from J&R. (Ds' 56.1 ¶ 7.)  At this time, Plaintiff asked Mr. Falanga to roll over his Plan balance into an IRA of Plaintiff's choosing. (Klepeis Aff. ¶ 8; Ds' Mem. 4 (admitting first rollover request occurred in January 2005).)[5]  Mr. Falanga did not respond to this request. (Falanga Aff. ¶ 10; Klepeis Aff. ¶ 8; *see also* Ds' Mem. 4 (stating Mr. Falanga would not accept the "first improper form request" of January 2005).)  Plaintiff complained to QPC about Mr. Falanga's failure to respond to this request, and QPC told Plaintiff that his account was fully funded, but that it could not roll over his balance without direction from Mr. Falanga, which it never

---

[4]  "Plan Document" refers to the portion of Ex. C that follows the Plan's 26-page Summary Plan Description ("SPD").  Unless otherwise noted, all references to exhibits are to those attached to Attorney Jeffrey S. Sculley's Affidavit in Support of Plaintiff's Motion for Summary Judgment, (Doc. 24-1), filed as documents 25–33 and 35–43 on ECF.

[5]  "Klepeis Aff." refers to Affidavit of Edward Klepeis in Support of Plaintiff's Motion for Summary Judgment.  (Doc. 24-2.)  "Ds' Mem." refers to Defendants' Memorandum of Law in Support of Motion for Summary Judgment.  (Doc. 52.)

received.  (Falanga Aff. ¶ 10; Klepeis Aff. ¶ 10.)[6]  QPC directed Plaintiff to submit another request to Mr. Falanga.  (Falanga Aff. ¶ 10; Klepeis Aff. ¶ 10.)  As of December 31, 2005, Plaintiff's fully vested account balance, including J&R's contributions, totaled $63,936.41.  (Falanga Aff. ¶ 9; Klepeis Aff. ¶ 9; Ex. H-1.)  As of December 31, 2006, the fully vested balance in Plaintiff's Plan account was $71,638.64.  (Falanga Aff. ¶ 13; Klepeis Aff. ¶ 14; Ex. H-2.)

In May 2006, Mr. Falanga sued Plaintiff in New York state court demanding additional payment of over $300,000 relating to Plaintiff's house.  (Falanga Aff. ¶ 11; Klepeis Aff. ¶ 11; Falanga Dep. 88.[7])  That lawsuit is still pending and is apparently quiescent.  (Falanga Aff. ¶ 11; Klepeis Aff. ¶ 11; Falanga Dep. 88.)

On August 24, 2006, Plaintiff wrote Mr. Falanga a letter demanding his annual account statements for the Plan years 2005 and 2006, his current account statement, all reports filed relating to the Plan from January 1, 2004 until the date of the letter, and the forms Mr. Falanga claimed were necessary to effectuate his January 2005 rollover request.  (Falanga Aff. ¶ 11; Klepeis Aff. ¶ 11.)

---

[6] Except in their Memorandum of Law, in which they acknowledge that the January 2005 request was made to Mr. Falanga, (Ds' Mem. 4), the Defendants do not directly address Plaintiff's assertions that he asked Mr. Falanga in January 2005 to roll over Plaintiff's Plan balance and that QPC never received Mr. Falanga's authorization to comply with Plaintiff's request.  Mr. Falanga's affidavit, which largely tracks Plaintiff's affidavit, simply omits portions corresponding to these assertions.  But Mr. Falanga's affidavit seems to acknowledge that such a request was made and not fulfilled, as it states that Plaintiff complained to QPC about Mr. Falanga's failure to respond, and that QPC told Plaintiff it could not comply absent authorization.  Further, the affidavit also acknowledges that Mr. Falanga received an August 2006 letter from Plaintiff demanding the forms Mr. Falanga claimed were necessary to effectuate his January 2005 request.  I consider assertions of facts that Defendants do not address as undisputed, *see* Fed. R. Civ. P. 56(e), and thus conclude (even without considering the oblique acknowledgements) that Mr. Falanga had knowledge of Plaintiff's 2005 request, and that he did not authorize QPC to comply.  I also note that Defendants did not submit a 56.1 counterstatement with respect to Plaintiff's Motion for Summary Judgment, as required by Local Civ. R. 56.1, available at http://www.nysd.uscourts.gov/courtrules.php, but rather only submitted a 56.1 statement with respect to their Motion for Summary Judgment.  Defendants' counsel is put on notice that he is required to comply with the Rule in the future.

[7] "Falanga Dep." refers to the Examination Before Trial of Joseph T. Falanga.  (Ex. F.)

4

On January 24, 2007, using forms that Mr. Falanga supplied, Plaintiff submitted a written rollover request (the "2007 Rollover Request") for the direct transfer of his vested Plan funds as one lump sum into an IRA.  (Ds' 56.1 ¶ 13; Ex. D-1.)  This rollover request specified that the amount rolled over "be adjusted for any Plan earning allocation applicable to [Plaintiff's] Plan account balance ending December 31, 2006."  (Ds' 56.1 ¶ 14; Ex. D-1, at 1.)  Despite not being able to "see where [he] would ever deny a request for a rollover," (Falanga Dep. 20:12–13), in a February 19, 2007 letter to Plaintiff, Mr. Falanga denied the 2007 Rollover Request because it was not "received before the end of the valuation year."  (Ex. E-11.)  According to Mr. Falanga, this letter advised Plaintiff that the 2007 Rollover Request would be impossible to fulfill because the rollover had to be requested by the end of the plan year, December 31, 2006.  (Falanga Dep. 21–22.)

Mr. Falanga admits that he did not know if that requirement exists under the Plan; instead, he relied solely on what QPC told him.  (*Id.* at 24.)  According to Mr. Falanga, valuation for all requests made during the previous plan year would take place before any distributions were made.  (*Id.* at 21, 24.)  The Plan Document, SPD, and rollover request forms, however, do not contain any requirement that a request must be made before the close of the "valuation year," define or use the term "valuation year," or provide notice of any such requirement to Plan participants.  (P's 56.1 ¶ 16;[8] Starr Dep. 16, 19.[9])

On July 16, 2008, Plaintiff submitted a second written rollover request to Mr. Falanga.  (Ds' 56.1 ¶ 17; Ex. D-2.)  Defendants did not comply with this request, and concede that they did

---

[8] "P's 56.1" refers to Plaintiff's Statement of Undisputed Material Facts.  (Doc. 45.)  Again, Defendants do not address these facts, so I consider them undisputed for the purposes of the parties' summary judgment motions.  *See* Fed. R. Civ. P. 56(e).  Moreover, the Plan Document, SPD, and 2007 rollover request form, (Ex. D-1), are part of the record and a review of them confirms Plaintiff's allegation regarding them.

[9] "Starr Dep." refers to the Deposition of Lawrence Starr, the president of QPC.  (Ex. G.)

5

not explain to Plaintiff their reason for noncompliance. (Ds' 56.1 ¶ 19; P's 56.1 ¶ 20.) According to Defendants, this request was denied because, sometime in the summer of 2008, Mr. Falanga made an application to the Internal Revenue Service to close the Plan, and as a result all Plan funds were frozen. (Ds' 56.1 ¶ 17; Falanga Dep. 28–29.) As of August 4, 2010, Plaintiff's Plan balance had decreased to $57,346.76. (Ds' 56.1 ¶ 19; Ex. H-5.)

On January 13, 2010, Plaintiff commenced this action to compel the rollover of his Plan funds into an IRA. (Doc. 1.) On or about January 20, 2011, Plaintiff received a letter from Rollover Systems, Inc. ("Rollover") stating that $57,312.76 had been transferred into an IRA managed by Rollover. (Klepeis Aff. ¶ 23; Ex. E-16.) The Court is not aware of any efforts by Plaintiff to recover the present value in the Rollover IRA from Rollover or Defendants. Plaintiff has filed this Motion for Summary Judgment, seeking a judgment as a matter of law that he was entitled to have his plan funds rolled over as of December 31, 2005, (P's Mem. 6),[10] and thus a judgment in the amount of $63,936.41,[11] plus prejudgment interest and attorneys' fees, (*Id.* at 7). Defendants, in turn, have filed their own Motion for Summary Judgment, seeking a judgment as a matter of law that Plaintiff is not entitled to such relief. (Ds' Mem. 6.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[10] "P's Mem." refers to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment. (Doc. 44.)

[11] Plaintiff states on page 7 of his opening brief that he is entitled to a judgment in the amount of $75,994.21, the balance of his Plan account as of December 31, 2007, as discussed in Point I of his brief. (P's Mem. 7.) Point I, however, concludes with Plaintiff's request for summary judgment that he was entitled to have his funds rolled over as of December 31, 2005. (*Id.* at 6.) I will consider the December 31, 2005 amount as Plaintiff's request.

6

R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Where, as here, an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters

stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

### B.     Plaintiff's Rollover Requests

Under ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants . . . in accordance with the documents and instruments governing the plan . . . ." 29 U.S.C. § 1104(a)(1)(A), (D). A fiduciary breaches his duties by preventing or interfering with the receipt of benefits to which the participant is entitled. *Blatt v. Marshall & Lassman*, 812 F.2d 810, 813 (2d Cir. 1987) (one-and-a-half year delay in performing a "simple function" of executing a "Notice of Change" form preventing distribution of funds to retired participant held a breach). A plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). There is no dispute that Plaintiff may bring a civil action under this provision to compel Defendants to roll over his Plan funds into an IRA. *See Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) (suits seeking to compel the defendant to pay a sum of money are suits for legal relief under § 1132(a)(1)(B) rather than equitable relief under § 1132(a)(3)).

Under the Plan, Plaintiff was entitled to have Mr. Falanga roll over his vested balance in the Plan on December 31, 2005. The parties do not dispute that Mr. Falanga was a fiduciary;

8

that Plaintiff was a Plan participant at all relevant times; and that Plaintiff first requested a rollover from Mr. Falanga in January 2005.  Under the terms of the Plan, he would be entitled to distribution on the next Anniversary Date—that is, December 31, 2005.  (Plan Document 1, 11, 48.)  Defendants argue that Mr. Falanga was justified in ignoring Plaintiff's January 2005 rollover request because it was not in the proper form.  (*See* Ds' Mem. 4.)  But the Plan does not require formal claims for participants to receive benefits.  Indeed, when Plaintiff complained in 2005 about Mr. Falanga's unresponsiveness to Plaintiff's rollover request, QPC, the plan administrator on which Mr. Falanga relies for information about the Plan's requirements, told Plaintiff that it needed only Mr. Falanga's authorization, not a formal request by Plaintiff.  Mr. Falanga, as a Plan fiduciary with the duty to provide Plan benefits to participants, should have given his authorization without unreasonable delay.  *See, e.g.*, *Blatt*, 812 F.2d at 813 (one-and-a-half year delay unreasonable).  Mr. Falanga did not, breaching his fiduciary duty to Plaintiff.  Accordingly, on the undisputed facts, I find as a matter of law that Plaintiff was entitled to have his plan funds rolled over as of December 31, 2005.

Further, Mr. Falanga breached his fiduciary duty by failing to execute the subsequent written rollover requests.  Defendants argue that the refusal to execute the first written request was justified because it was untimely, (*see* Ds' Mem. 4–5; Ds' Repl. 1[12]), but point to no authority, in either the Plan or the ERISA statute, for any timing requirement.  Likewise, they argue that the refusal to execute the second written request was justified because the request was not timely, (Ds' Mem. 4), and because the funds were frozen pending IRS approval of the Plan's termination, (Ds' Repl. 1).  But again, Defendants cite no authority, in the Plan or the ERISA

---

[12] "Ds Repl." refers to Defendants' Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment.  (Doc. 62.)

statute, regarding timing or regarding the freezing of Plan assets pending termination requests. The SPD does state that upon termination, the Plan assets will be distributed as soon as practicable, but also states that participants will be notified of termination of the Plan. (SPD 19.) Thus, even though the Plan does allude to some delay of distribution if and when a Plan is terminated, such a provision does not allow a fiduciary to hold onto a participant's assets before Plan termination occurs or where a participant has no notice that termination has occurred. The failure to honor the subsequent written rollover requests also constituted breaches of Mr. Falanga's fiduciary duty.

Accordingly, Plaintiff is entitled to summary judgment. It appears to the Court, however, that although Plaintiff would be entitled to a judgment in the amount of $63,936.41, the full value in his Plan account as of the date of the breach (December 31, 2005), Defendants would be entitled to a credit in the amount Plaintiff can recover from his Rollover account. Plaintiff should attempt to access his Rollover account and have those funds transferred to an IRA of his choosing.

### C.   Prejudgment Interest

Plaintiff seeks prejudgment interest on the amount he was entitled to have Mr. Falanga roll over as of December 31, 2005. (P's Mem. 7–8.) ERISA entrusts district courts with broad discretion in deciding whether to award prejudgment interest to a successful claimant. *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 53–54 (2d Cir. 2009). A district court should consider the following factors in making this decision: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id*. at 55.

10

As to the need for full compensation, prejudgment interest is "particularly appropriate as a means of ensuring that [successful ERISA claimants] are made whole and that defendants do not profit by their failure to comply with their ERISA obligations." *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 875, 899 (S.D.N.Y. 1994); *see also Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (prejudgment interest is an "element of [plaintiff's] complete compensation") (alteration in original and internal quotation marks omitted). Here, I find that prejudgment interest on $63,936.41 beginning on December 31, 2005 is an appropriate part of Plaintiff's compensation, as Plaintiff should have been able to invest his money as he saw fit as of that date.

I also find an award of prejudgment interest to be fair and equitable. Plaintiff made his first appropriate rollover request in January 2005. Mr. Falanga had the whole year to authorize Plaintiff's request before the year-end deadline following Plaintiff's termination. By not taking action, Mr. Falanga breached his duty to act solely for the benefit of Plaintiff. Considering Mr. Falanga's subsequent actions within the prejudgment interest accrual period also favors Plaintiff. First, Mr. Falanga denied Plaintiff's 2007 request because Plaintiff did not submit it by the end of the previous valuation year, but no such requirement existed in the Plan. It does not seem unduly burdensome that QPC handle rollover requests on a rolling basis, as there were only a handful of Plan participants. (*See* Ex. H-5 (five participants as of August 4, 2010).) Second, Mr. Falanga did not respond to Plaintiff's 2008 request, nor did he tell Plaintiff that he made a request in mid-2008 to the IRS to close the Plan, or that such a request required the Plan funds to be frozen. These actions were further breaches of Mr. Falanga's fiduciary duty under the Plan and support an award of prejudgment interest in the interest of fairness.

Finally, the central objective of ERISA is "protecting employees' justified expectations of receiving the benefits their employers promise them." *Cent. Laborer's Pension Fund v. Heinz*, 541 U.S. 739, 743 (2004). I find that Plaintiff was justified in expecting to have his Plan funds rolled over to an IRA as of December 31, 2005 under the terms of the Plan. The SPD specifically says that no formal claims were required. Plaintiff was justified in expecting that Mr. Falanga would honor his January 2005 request no matter what form it took, or at least that he would get a straight answer from Mr. Falanga, who owed Plaintiff a fiduciary duty, as to what was necessary to get his own money out of the Plan.

Considering all of the *Slupinski* factors, I find that Plaintiff is entitled to prejudgment interest. There is, however, no federal statute setting the rate of prejudgment interest. *Jones*, 223 F.3d at 139. The appropriate rate depends on the circumstances of the case; it may depend on factors including, but not limited to, the post-judgment interest rate, the interest rate Plaintiff would have earned on the amount of the judgment by investing it, or the rate of interest the Defendants would have had to pay to borrow the amount of judgment to pay Plaintiff. *Id.*

Plaintiff does not provide enough information at this time for me to determine the appropriate prejudgment interest rate or total amount due to him. Plaintiff submits only that he would have transferred his plan balance into his Morgan Stanley/Smith Barney IRA when he made his 2007 request, and that this IRA appreciated by 33% over 2009 and 2010. (Klepeis Aff. ¶ 19; *see* Exs. H-6, H-7.) Plaintiff does not provide the appreciation rate for his IRA from Dec. 31, 2005, if he had one at that time, until now. This rate, whether actual or approximate, may be relevant to determine the amount of prejudgment interest, if any, to which Plaintiff is entitled. Nor do I have information regarding interest rates at the relevant time. Should Plaintiff's balance today be the same regardless of where he invested his Plan funds—*i.e.* the Plan or his own

12

IRA—he would not be entitled to any prejudgment interest. *See Algie*, 891 F. Supp. at 899 ("[T]he aim of the [prejudgment interest] awarded is to make the plaintiffs whole, but not to give them a windfall."). I grant Plaintiff leave to submit proof in support of a prejudgment interest rate.

> **D.**      **Attorneys' Fees**

Plaintiff also seeks attorneys' fees and costs incurred in prosecuting this action. A district court has discretion under Section 502(g)(1) of ERISA to award attorneys' fees and costs to either party. 29 U.S.C. § 1132(g)(1); *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987). In deciding whether to award attorneys' fees, the court should consider

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless*, 815 F.2d at 871.

"Culpability" and "bad faith" are distinct standards, and a district court need not reach the question of bad faith in order to find the first *Chambless* factor satisfied. *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 450–51 (2d Cir. 2006). A losing defendant is culpable if it "violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate." *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000). This standard necessarily involves consideration of the merits of moving party's case, and thus of the first and fourth *Chambliss* factors together. *See, e.g. Paese*, 449 F.3d at 451; *Seitzman v. Sun Life Assurance Co. of Can.*, 311 F.3d 477, 483 (2d Cir. 2002). As I have found that Defendants violated ERISA, depriving Plaintiff of his right under the Plan to have Defendants roll over his funds into an IRA, Defendants are culpable. Moreover, Mr. Falanga's actions seem to have

coincided with an unrelated dispute with Plaintiff, and he ignored his fiduciary duty for a long time and in the face of repeated rollover requests, suggesting a degree of culpability beyond simply failing to do what ERISA requires. Thus, the first and fourth *Chambliss* factors are satisfied.

I also find the second *Chambliss* factor, Defendant's ability to pay attorneys' fees, satisfied. Both parties agree, indeed in the exact same wording, that Defendants have that ability.[13] (Ds' Mem. 9; P's Mem. 11.)

The third *Chambless* factor, deterrence of other potential wrongdoers, is also met. An award will encourage 401(k) fiduciaries to comply with, or perform simple tasks to aid the completion of, plan participants' requests. This conclusion is supported by Mr. Falanga's failure to effectuate Plaintiff's 2005 rollover request alone, but Mr. Falanga's denial of Plaintiff's 2007 request, failure to respond to Plaintiff's 2008 request, and failure to notify Plaintiff of the request to close the Plan are breaches of fiduciary duty in their own right. An award of attorneys' fees should contribute to deterring other plan fiduciaries from similar violations and encourage them to set forth rollover timing requirements very clearly in plan documents so that plan participants have sufficient notice. While the fifth *Chambless* factor is not in Plaintiff's favor, as this action does not confer a common benefit on a group of Plan participants, the other four factors weigh in favor of Plaintiff. I therefore find that he is entitled to an award of attorneys' fees. *See Locher v.*

---

[13] As Defendants' counsel in Defendants' brief seems to have copied large swaths of Plaintiff's opening brief, the Court can only guess if Defendants really agree with Plaintiff's position or carelessly failed to indicate disagreement. For instance, there may be no denying that the evidence "amply demonstrates that defendants have the financial wherewithal to satisfy an award of attorney's fees." (Ds' Mem. 9; P's Mem. 11.) But Defendants cannot have meant to assert that, in addressing prejudgment interest, that "[e]ach of the factors discussed in *Slupinski* militate in favor of awarding Klepeis prejudgment interest," given that they argue that Plaintiff is not entitled to prejudgment interest. (D's Mem. 6.) At the very least, Defendants' counsel seems to have done his clients a disservice in simply parroting, carelessly, portions of Plaintiff's brief. In any event, the record indicates that Defendants have substantial revenues, and there is no indication that they lack the ability to pay Plaintiff's attorneys' fees.

*Unum Life Ins. Co. of America*, 389 F.3d 288, 299 (2d Cir. 2004) (affirming award of attorneys' fees when only first four *Chambliss* factors satisfied). I grant Plaintiff leave to submit proof of the attorneys' fees and costs incurred in bringing and prosecuting this action.

### III. Conclusion

Plaintiff's Motion for Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 24, 34), and seal the parties' attachments to their Motions, (Docs. 25–33, 35–43, 53, 56–61), pending substitution of redacted copies.

This matter is hereby referred to Magistrate Judge Paul E. Davison for a determination of the appropriate amount of damages, prejudgment interest, attorneys' fees and costs.

**SO ORDERED.**

Dated: February 9, 2012
White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.